1
2
3
4
5
6                    **UNITED STATES DISTRICT COURT**
7                          **DISTRICT OF NEVADA**
8
9    SAMUEL GRIFFIN,
10          *Petitioner*,                    3:07-cv-00525-HDM-VPC
11   vs.                                     ORDER
12   JAMES BENEDETTI, *et al.*,
13          *Respondents.*
14
15        This habeas matter under 28 U.S.C. § 2254 comes before the Court for a final decision
16   on the claims presented.
17                              ***Background***
18        Petitioner Samuel Griffin seeks to set aside his 2002 Nevada state conviction, pursuant
19   to a guilty plea, of armed robbery.  On federal habeas review, the Court's scheduling order
20   directed respondents to present any remaining procedural defenses to the amended petition
21   together with their response to the merits.  In their answer, in addition to responding to the
22   merits, respondents contend: (a) that the equal protection claim in Ground 1-6 is not
23   exhausted; and (b) that the claims in Grounds 1-1, 1-3, 1-5 and 1-6 lack the required
24   specificity and should be summarily dismissed.
25                          ***Procedural Defenses***
26        The equal protection claim in Ground 1-6 is not exhausted.
27        Under 28 U.S.C. § 2254(b)(1)(A), a habeas petitioner first must exhaust state court
28   remedies on a claim before presenting that claim to the federal courts.  To satisfy this

exhaustion requirement, the claim must have been fairly presented to the state courts completely through to the highest court available, in this case the state supreme court. *E.g.,* *Peterson v. Lampert*, 319 F.3d 1153, 1156 (9th Cir. 2003)(*en banc*); *Vang v. Nevada*, 329 F.3d 1069, 1075 (9th Cir. 2003).  In the state courts, the petitioner must refer to the specific federal constitutional guarantee and must also state the facts that entitle the petitioner to relief on the federal constitutional claim. *E.g., Shumway v. Payne*, 223 F.3d 983, 987 (9th Cir. 2000).  That is, fair presentation requires that the petitioner present the state courts with both the operative facts and the federal legal theory upon which the claim is based. *E.g., Castillo v. McFadden*, 399 F.3d 993, 999 (9th Cir. 2005).  The exhaustion requirement insures that the state courts, as a matter of federal-state comity, will have the first opportunity to pass upon and correct alleged violations of federal constitutional guarantees. *See,e.g., Coleman v. Thompson*, 501 U.S. 722, 731, 111 S.Ct. 2546, 2554-55, 115 L.Ed.2d 640 (1991).

Under *Rose v. Lundy*, 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982), a mixed petition presenting both exhausted and unexhausted claims must be dismissed without prejudice unless the petitioner dismisses the unexhausted claims or seeks other appropriate relief.

In Ground 1-6, petitioner alleges that defense counsel failed to advise and/or consult with him regarding his direct appeal rights.  He alleges that he learned of his direct appeal rights from other inmates and filed a *pro se* notice of appeal.  Petitioner alleges that he was denied rights to equal protection, due process and effective assistance of counsel in violation of the Sixth and Fourteenth Amendments.[1]

No equal protection claim in this regard was presented to the Supreme Court of Nevada on the state post-conviction appeal.  Petitioner presented a claim arising on these facts based upon a denial of only a right to effective assistance of counsel.[2]  In the federal reply, petitioner urges – without addressing the equal protection claim separately – that

_____

[1]#32, at electronic docketing page 7.

[2]#22, Ex. 83, at 11 (fast track statement).

1   Ground 1-6 was fairly presented to the state courts because the claim was presented to the

2   state district court and the state supreme court "on the same factual basis."[3]   However, it is

3   established law that petitioner must present the state courts with both the operative facts and

4   the federal legal theory upon which his claim is based.  *Castillo, supra.*  Petitioner did not do

5   so as to the equal protection legal theory in Ground 1-6.

6        The equal protection claim in Ground 1-6 thus is not exhausted.

7        Further proceedings under *Rose v. Lundy* as to this claim are not warranted, however.

8   The Court may dismiss an unexhausted claim on the merits pursuant to 28 U.S.C. §

9   2254(b)(2).  The equal protection legal theory plainly is meritless on its face.  Not all allegedly

10  unequal or dissimilar treatment of individuals gives rise to an equal protection violation,

11  particularly in situations where other constitutional provisions instead are applicable.

12  *See,e.g., Bruce v. Ylst*, 351 F.3d 1283, 1288 (9th Cir. 2003).  Alleged ineffective assistance

13  of counsel in allegedly failing to consult with a defendant about appeal rights does not give

14  rise to an equal protection violation.

15       The equal protection claim in Ground 1-6 therefore will be dismissed on the merits.

16       On their other procedural defense, respondents contend that Grounds 1-1, 1-3, 1-5

17  and 1-6 lack the specificity required by habeas pleading rules.  However, even assuming,

18  *arguendo*, that respondents are correct, it appears that these claims were exhausted and

19  rejected by the state courts on the merits on the arguments and record presented in those

20  courts.  The more efficient and determinative resolution[4] of the claims therefore would be to

21  address the issue of whether the state courts' rejection of the same claims was contrary to

22  or an unreasonable application of clearly established federal law.

23       The Court accordingly turns to the merits of the exhausted claims.

24  _____

25       [3]#38, at 5.  Petitioner also states in note 3 on the preceding page of the reply that he abandons as
    redundant a statement regarding "a denial of his rights to equal protection and due process."  *Id.*, at 4 n.3.  It
26  is not entirely clear to what petitioner is referring, either as to the specific language in question or as to the
    specific action that he is purporting to take.  The Court has proceeded on the basis that petitioner contests
27  the exhaustion issue as to this claim, given that he provides opposition argument on the issue.

28       [4]The Court generally does not dismiss deficiently-pled claims without an opportunity to amend.

1

***Standard of Review on the Merits***

2      The Antiterrorism and Effective Death Penalty Act (AEDPA) imposes a "highly

3 deferential standard for evaluating state-court rulings." *Lindh v. Murphy*, 521 U.S. 320, 333

4 n.7, 117 S.Ct. 2059, 2066 n.7, 138 L.Ed.2d 481(1997). Under this deferential standard of

5 review, a federal court may not grant habeas relief merely on the basis that a state court

6 decision was incorrect or erroneous. *E.g., Clark v. Murphy*, 331 F.3d 1062, 1067 (9th Cir.

7 2003). Instead, under 28 U.S.C. § 2254(d), the court may grant relief only if the decision: (1)

8 was either contrary to or involved an unreasonable application of clearly established law as

9 determined by the United States Supreme Court; or (2) was based on an unreasonable

10 determination of the facts in light of the evidence presented at the state court proceeding.

11 *E.g.*, *Mitchell v. Esparza*, 540 U.S. 12, 15, 124 S.Ct. 7, 10, 157 L.Ed.2d 263 (2003).

12      A state court decision is "contrary to" law clearly established by the Supreme Court only

13 if it applies a rule that contradicts the governing law set forth in Supreme Court case law or

14 if the decision confronts a set of facts that are materially indistinguishable from a Supreme

15 Court decision and nevertheless arrives at a different result. *E.g., Mitchell,* 540 U.S. at 15-16,

16 124 S.Ct. at 10. A state court decision is not contrary to established federal law merely

17 because it does not cite the Supreme Court's opinions. *Id.* Indeed, the Supreme Court has

18 held that a state court need not even be aware of its precedents, so long as neither the

19 reasoning nor the result of its decision contradicts them. *Id.* Moreover, "[a] federal court may

20 not overrule a state court for simply holding a view different from its own, when the precedent

21 from [the Supreme] Court is, at best, ambiguous." *Mitchell*, 540 U.S. at 16, 124 S.Ct. at 11.

22 For, at bottom, a decision that does not conflict with the reasoning or holdings of Supreme

23 Court precedent is not contrary to clearly established federal law.

24      A state district court decision constitutes an "unreasonable application" of clearly

25 established federal law only if it is demonstrated that the state court's application of Supreme

26 Court precedent to the facts of the case was not only incorrect but "objectively unreasonable."

27 *E.g., Mitchell*, 540 U.S. at 18, 124 S.Ct. at 12; *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir.

28 2004).

1    To the extent that the state court's factual findings are challenged intrinsically based

2   upon evidence in the state court record, the "unreasonable determination of fact" clause of

3   Section 2254(d)(2) controls on federal habeas review.  *E.g., Lambert v. Blodgett*, 393 F.3d

4   943, 972 (9th Cir. 2004).  This clause requires that the federal courts "must be particularly

5   deferential" to state court factual determinations.  *Id*.  The governing standard is not satisfied

6   by a showing merely that the state court finding was "clearly erroneous."  393 F.3d at 973.

7   Rather, the AEDPA requires substantially more deference:

8    . . . .  [I]n  concluding that a state-court finding is unsupported by
        substantial evidence in the state-court record, it is not enough that
9        we would reverse in similar circumstances if this were an appeal
        from a district court decision. Rather, we must be convinced that
10       an appellate panel, applying the normal standards of appellate
        review,  could  not  reasonably  conclude  that  the  finding  is
11       supported by the record.

12   *Taylor v. Maddox*, 366 F.3d 992, 1000 (9th Cir. 2004); *see also Lambert*, 393 F.3d at 972.

13    If  the  state  court  factual  findings  withstand  intrinsic  review  under  this  deferential

14   standard, they then are clothed in a presumption of correctness under 28 U.S.C. § 2254(e)(1);

15   and they may be overturned based on new evidence offered for the first time in federal court,

16   if other procedural prerequisites are met, only on clear and convincing proof.  393 F.3d at 972.

17    The petitioner bears the burden of proving by a preponderance of the evidence that he

18   is entitled to habeas relief.  *Davis*, 384 F.3d at 638.

19                          ***Governing Substantive Law***

20    The Supreme Court decisions in *Tollett v. Henderson*, 411 U.S. 258, 93 S.Ct. 1602, 36

21   L.Ed.2d 235 (1973), and *Hill v. Lockhart*, 474 U.S. 52, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985),

22   sharply curtail the possible grounds available for challenging a conviction entered following a

23   guilty plea.  As the Court stated in *Tollett*:

24     . . . .  [A] guilty plea represents a break in the chain of
25       events which has preceded it in the criminal process.  When a
        criminal defendant has solemnly admitted in open court that he is
26       in fact guilty of the offense with which he is charged, he may not
        thereafter raise independent claims relating to the deprivation of
27       constitutional rights that occurred prior to the entry of the guilty
        plea. He may only attack the voluntary and intelligent character of
28       the guilty plea by showing that the advice he received from

-5-

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

> counsel was not within the [constitutional] standards [established
> for effective assistance of counsel.]

411 U.S. at 267, 93 S.Ct. at 1608.  Accordingly, "while claims of prior constitutional deprivation may play a part in evaluating the advice rendered by counsel, they are not themselves independent grounds for federal collateral relief." *Id.*

In *Hill*, the Court held that the two-pronged test of *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), applies to challenges to guilty pleas based on alleged ineffective assistance of counsel.  474 U.S. at 58, 106 S.Ct. at 370.  Accordingly, a petitioner seeking to set aside a guilty plea due to ineffective assistance of counsel must demonstrate: (1) that his counsel's performance fell below an objective standard of reasonableness; and (2) that the defective performance resulted in actual prejudice.  474 U.S. at 58-59, 106 S.Ct. at 370.

On the performance prong, the question is not what counsel might have done differently but rather is whether counsel's decisions were reasonable from counsel's perspective at the time.  In this regard, the reviewing court starts from a strong presumption that counsel's conduct fell within the wide range of reasonable conduct.  *E.g., Beardslee v. Woodford*, 358 F.3d 560, 569 (9th Cir. 2004).

On the prejudice prong, as a general matter under *Strickland*, the petitioner must demonstrate a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  *E.g., Beardslee*, 358 F.3d at 569. Application of this general principle to the specific context of a guilty plea leads to the requirement that the petitioner "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."  *Hill*, 474 U.S. at 59, 106 S.Ct. at 370.

Under *Hill*, a challenge to the voluntariness of a guilty plea potentially may be based upon a claim of ineffective of assistance of counsel in proceedings prior to the plea.  As the Court observed:

> . . . . For example, where the alleged error of counsel is a
> failure to investigate or discover potentially exculpatory evidence,

-6-

1     the determination whether the error "prejudiced" the defendant by
      causing him to plead guilty rather than go to trial will depend on
2     the likelihood that discovery of the evidence would have led
      counsel to change his recommendation as to the plea.   This
3     assessment, in turn, will depend in large part on a prediction
      whether the evidence likely would have changed the outcome of
4     a trial.  Similarly, where the alleged error of counsel is a failure to
      advise the defendant of a potential affirmative defense to the
5     crime charged, the resolution of the "prejudice" inquiry will depend
      largely on whether the affirmative defense likely would have
6     succeeded at trial. . . . . As we explained in *Strickland v.*
      *Washington, supra*, these predictions of the outcome at a possible
7     trial, where necessary, should be made objectively, without regard
      for the "idiosyncrasies of the particular decisionmaker." *Id.*, 466
8     U.S., at 695, 104 S.Ct., at 2068.

9  474 U.S. at 59-60, 106 S.Ct. at 370-71.  Thus, an attorney's unprofessional error in failing to

10  develop a meritorious defense may serve as a basis for overturning a guilty plea and

11  conviction only if, viewed objectively, there is a reasonable probability that, but for the error,

12  the petitioner would not have pled guilty and would have insisted on going to trial.

13                                        ***Discussion***

14  **Ground 1-1**

15      In Ground 1-1, petitioner alleges that he was denied effective assistance of counsel

16  because counsel did not file a motion, allegedly as directed by the state district court, to hold

17  the State to a prior unconsummated plea agreement.  Petitioner maintains that the State was

18  attempting to pressure him into pleading guilty in another case, No. CR02-1201, to a crime that

19  he allegedly did not commit.  He alleges that, when he refused to do so, the State withdrew

20  from the first agreement and instead presented a proposed plea agreement that had three

21  times as much sentencing exposure.  Griffin maintains that counsel should have zealously

22  fought against the State's "transparent attempt to coerce Griffin (successfully) into entering the

23  second plea agreement."[5]

24      In April 2002, Griffin was on parole on a prior armed robbery conviction.  He had two

25  prior convictions from the early 1990's, a conviction for robbery and another for armed robbery.

26  It appears from the record and Griffin's own acknowledgments at the sentencing on

27  _____

28       [5]#32, at electronic docketing pages 3-4.

                                        -7-

1  the present conviction that he was out on parole on the armed robbery conviction in April

2  2002.[6]

3       The declaration in support of the arrest report reflects that petitioner would have faced,

4  *inter alia*, evidence corresponding to the following had he gone to trial.[7]

5       On April 6, 2002, a black male entered a convenience store at 501 W. 4th Street in

6  Reno, Nevada.  The male ultimately pulled a handgun and demanded that the store clerk give

7  him the money from the register.  A struggle ensued, during which the male grabbed and

8  pulled off a necklace that the clerk was wearing.  The male also pulled the trigger five times,

9  but the gun did not discharge.  The robber left the store with the necklace.

10      On April 11, 2002, Helen Jones was in the 4th Street store.  The clerk recognized the

11  necklace that she was wearing as the one that had been taken from him in the robbery.  Jones

12  told the police that the necklace had been a present from a man who they identified as Eric

13  Norman.  The police lost track of Norman before they could question him.

14  _____

15      [6]#21, Ex. 24, at 19, 26, 27-29 & 36-38; see also #22, Ex. 66, at 17-19.

16      [7]#21, Ex. 2.  When a defendant enters a plea prior to trial, there of course is no trial record reflecting

17  the evidence that the State would have presented at trial and any evidence that the defense might have
presented.  The only indicia of the evidence that the State potentially would have presented at trial absent a

18  plea generally are arrest reports and any preliminary examination testimony.

19      In summarizing factual assertions made in the state court record, the Court makes no credibility
determination as to the veracity of any declarant or witness or any factual finding as to the truth or falsity of

20  any factual assertions.  In this instance, the Court summarizes the factual assertions solely as an indication of
the evidence that would have been available to the State had the matter gone to trial.  The evidence that the

21  State likely would have presented at trial is relevant to the determination of whether, but for the alleged error
of counsel, there is a reasonable probability that a defendant in the petitioner's situation would not have pled

22  guilty and instead would have insisted on going to trial.  *See Hill*, 474 U.S. at 59, 106 S.Ct. at 370.

23      To be sure, petitioners on habeas review often maintain that they did not commit a crime.  In this
case, Griffin admits that he committed the second armed robbery on April 14, 2002, but he adamantly

24  maintains that he did not commit the April 6, 2002, armed robbery.  Be that as it may, absent a plea deal, he
was going to trial on, *inter alia*, the April 6, 2002, armed robbery.  Griffin's disagreement with the State's

25  evidence on the April 6, 2002, armed robbery would not have prevented the case from going to trial and
would not have prevented the State from presenting its evidence.  At trial, it would have been in the province

26  of the jury to either disbelieve – or believe – the State's evidence.  That is the situation that Griffin faced prior
to the plea.

27

28      The Court makes no factual findings regarding the truth or falsity of any evidence in summarizing any
factual assertions in the state court record.

1        On April 14, 2002, Griffin entered a convenience store at 1445 E. 6th Street in Reno. He

2  pulled a knife and demanded that the store clerk give him the money from the register.  The

3  clerk complied, and Griffin left the store.  Griffin was followed to a nearby motel, arrested by

4  the police, and positively identified as the robber by the store clerk.  Griffin does not deny that

5  he committed this April 14, 2002, armed robbery  -- in which he was tracked fleeing from the

6  store directly to the motel where he was arrested and immediately positively identified.

7        On April 16, 2002, Griffin was charged with the April 14, 2002, 6th Street store armed

8  robbery.  On May 1, 2002, he signed a waiver of the preliminary examination.  Handwriting on

9  the bottom of the waiver noted: "Def to plead to Armed Robbery[,]  State will recommend 24-

10  60 months on charge then 24-60 months on enhancement – (4-10) years."[8]

11        According to the investigating officer, after the April 14, 2002, 6th Street robbery, he

12  began comparing the surveillance tapes from the two robberies due to similarities between

13  them.  The clothing appeared to be the same in each crime.  According to the officer, he then

14  presented a photo lineup to the 4th Street store clerk from the April 6, 2002, armed robbery.

15  According to the officer's report, the clerk selected Griffin's picture "but he could only initially

16  say it was a strong possibility as he had focused a great deal of his attention on the gun."

17  According to the report, the clerk began feeling more certain that Griffin was the robber after

18  viewing the images from the April 6, 2002, surveillance video.  When the officer showed the

19  clerk images from the April 14, 2002, robbery at the 6th Street store, the 4th Street store clerk

20  immediately identified the clothing as the same that had been worn by the robber of his store.

21  The 4th Street store clerk then "was even more certain" that Griffin was the robber at his store.[9]

22        On May 2, 2002, the police were able to locate and question Eric Norman.  According

23  to the arrest report, Norman identified Griffin from a photo lineup as the man who sold him the

24  necklace that he had given to Jones.  #21, Ex. 2.

25        / / / /

26

27        [8]#21, Exhs. 1 & 4.

28        [9]#21, Ex. 2.

On May 6, 2002, Griffin was charged by criminal complaint with the April 6, 2002, 4th Street store armed robbery.[10]

On July 24, 2002, the case based upon the April 6, 2002, 4th Street store robbery came on for a preliminary examination.  The store clerk, Ramiro Palacios, testified as follows. Palacios positively identified Griffin in his testimony as the robber at the 4th Street store. Palacios testified that Griffin came into the store, ultimately pulled a handgun, and told Palacios to give him the money in the cash register.  When Palacios did not comply quickly enough, Griffin grabbed Palacios near the neck.  As they separated, Griffin pulled Palacios' chain from around his neck and hit Palacios in the head with the butt of the handgun. According to Palacios, Griffin then said "I going to kill you now," and he pulled the trigger but the gun did not discharge.  Palacios grabbed a bat and chased Griffin out of the store, with Griffin pulling the trigger several times more in an attempt to shoot Palacios.[11]

Palacios testified further regarding the woman coming into the store the next day wearing his chain.  According to Palacios' testimony, he subsequently picked Griffin out of a photo lineup.[12]

The two cases were carried over to the state district court.  The charges on the April 6, 2002, 4th Street store armed robbery were carried over in No. CR02-1201.  The charges on the April 14, 2002, 6th Street store armed robbery were carried over in No. CR02-1040.

On August 7, 2002, the two cases came on for a previously scheduled proceeding. Defense counsel advised that, following negotiations, Griffin had anticipated pleading guilty in No. CR02-1040, but "the State wishe[d] to withdraw from the negotiations and the negotiated agreement."  He stated:  "We would be opposed to that."  #21, Ex. 21, at 3-4.

---

[10]#21, Ex. 1.

[11]#21, Ex. 15, at 4-24.  Petitioner made it known during the preliminary examination that he disagreed with Palacios' testimony.  *Id.*, at 17-18 & 34.  Griffin's disagreement, however, would not have prevented the State from going forward with the case and would not have necessarily prevented a jury from believing the witness.  The Court, again, makes no factual finding as to the truth or falsity of this, or any other, evidence.

[12]*Id.*, at 25-31.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

The prosecutor responded:

> What would happen, Your Honor, is that the defendant committed two robberies; two armed robberies, as a matter of fact. And there were negotiations on the first case. And when the defendant was arrested on the second case, we tried to package these cases. We were unable to do so, and so negotiations have fallen through. There was no meeting of the minds.

#21, Ex. 21, at 4.

Defense counsel advised the state district court that Griffin wanted to address the court directly. He stated that "my client wishes to address the fact that he does not feel the State can withdraw from the negotiations." The court responded: "That's fine. Go ahead. File the motion. I think they can." The court then proceeded forward to set No. CR02-1201-- the April 6, 2002, 4th Street store armed robbery -- for trial and to remand No. CR02-1040 -- the April 14, 2002, 6th Street store armed robbery -- back to the justice court.[13]

The transcript then reflects a recess in the proceeding. Thereafter, *as a continuation of the same proceeding the same day*, Griffin entered the plea in No. CR02-1040 as to the 6th Street store robbery upon which the conviction under attack is based, pursuant to an overall plea deal in which the State agreed to dismiss No. CR02-1201 at sentencing.[14]

Griffin, who had been present throughout, made no request that the state district court first entertain and rule on a motion regarding the State's withdrawal from the prior negotiations before he entered the plea. He instead responded that he did not have any questions about the negotiations, that he had had enough time to discuss the entire matter with counsel, that he was satisfied with the legal services provided by counsel, that he understood that he did not have to change his plea, that no promises outside of the plea agreement had been made to him to induce him to change his plea, that no threats had been made against him to get him to change his plea, that he was changing his plea freely and voluntarily, that he was pleading guilty because he was guilty and for no other reason, that the State was free to argue for the

---

[13]#21, Ex. 21, at 4-6.

[14]*Id.*, at 6-7.

maximum penalty, that the court did not have to follow any negotiations, and that his

sentencing exposure was consecutive sentences of two to fifteen years on the robbery and

weapon enhancement, consecutive to the sentence that he then was serving.[15]

The state district court accepted the plea, under which the charges as to the 4th Street

store robbery in No. CR02-1201 would be dismissed at sentencing.[16]

On October 22, 2002, the matter came on for sentencing.

With Griffin present, defense counsel noted that the negotiations included, *inter alia*,

the dismissal of No. CR02-1201.  Referring back to the day of the plea, he noted that the case

had been before the court on a motion to confirm the trial date, but a plea deal had been

reached after further negotiations in the hall after the proceeding was recessed.  Counsel

stated that the guilty plea memorandum and colloquy both were done correctly and "[t]hat's

what my client understands the negotiations to be."[17]

Counsel continued, however, that one of the draft guilty-plea memoranda in the *prior*

negotiations erroneously had stated that probation was an option.  He stated that he had

discussed the matter with Griffin and that he had "explained to him that if he made this deal

with the thought that probation was an option, that he would have grounds to withdraw his

guilty plea in my opinion."  Counsel informed the court:

> He informs me that he does not wish to withdraw his guilty
> plea to this case; that he made this negotiation knowing that –
> Whether he knew or not that probation was an option I am not
> sure; however, he knew that prison was likely based upon his
> record.  And that at this point he does not wish to withdraw his
> guilty plea.  He does not want to create waves for the Court.
>
> He knows that probation is not an option pursuant to the
> guilty-plea memoranda actually filed with the Court,
> notwithstanding what he had reviewed in a prior guilty-plea
> memoranda [sic] where it stated that it was an option.

---

[15]#21, Ex. 21, at 7-12.  See also *id.*, Ex. 22 (acknowledgments in written guilty plea agreement).

[16]*Id.*, at 12.

[17]#21, Ex. 24, at 3-4.

1
2

> So I've discussed that with my client.  He understands that these are the negotiations; that probation is not an option; and that the State is free to argue.

3   #21, Ex. 24, at 5-6.

4       The court asked Griffin whether he understood that, and he responded: "Yes, sir."[18]

5       Petitioner did not seek to withdraw the plea – on any ground – prior to sentencing, even

6   after the prospect of withdrawing the plea was clearly and expressly raised on the record.

7       Defense counsel, in his argument as to sentencing, observed that prior negotiations had

8   contemplated two consecutive 24 to 60 month sentences on the April 14, 2002, robbery and

9   weapon enhancement in No. CR02-1040 along with two consecutive 24 to 60 month

10  sentences on the April 6, 2002, robbery and weapon enhancement in No. CR02-1201.

11  Counsel stated:

12
13
14
15
16

> That was for both cases.  In this case – and I remember discussing this with my client for an extended period of time – that free to argue leaves the State free to argue.  My client pled guilty to this case because he did the case.  He did not wish to take any deals or negotiate any cases with any other case because he did not do those other cases.  He did not do the CR02-1201.  He did not want to take any deals on that, did not want to discuss that.  He had pled guilty to this case, CR02-1040, because in his mind he was guilty of this.

17  #21, Ex. 24, at 7-8.

18      Griffin and Griffin's wife similarly admitted on the record that he committed the April 14,

19  2002, robbery.  The defense sought to attribute the robbery – and his prior robberies over the

20  years – to his being unable to stay clear of drugs.[19]

21      Griffin maintained that he did not do the April 6, 2002, robbery.  Defense counsel

22  pointed out that the prosecutor correctly stated that Palacios had identified Griffin at the

23  preliminary examination and that Griffin was referring to a police report where "one of the

24  witnesses pointed out somebody else" as the robber.  #21, Ex. 24, at 30-35 & 38-39.

25      / / / /

26

27      [18]#21, Ex. 24, at 6; see also id., at 27-29.

28      [19]#21, Ex. 24, at 11 & 30.

1    The state district court sentenced Griffin to two consecutive sentences of 24 to 180

2  months each, consecutive to his remaining time following upon his parole revocation.[20]

3    The same state district judge that took Griffin's plea considered his state post-conviction

4  petition.  The judge rejected the corresponding ineffective assistance claim presented in the

5  state courts on the following grounds:

6           Petitioner claims ineffective assistance of counsel, alleging
        his attorney failed to file a motion to enforce a previous plea
7        agreement between the State and Petitioner.  The State argues
        that this . . . claim should . . . be dismissed because under [sic] the
8        State is free to withdraw from a plea agreement until it is
        performed or until the defendant detrimentally relies on it.  *State*
9        *v. Crockett*, 110 Nev. 838, 877 P.2d 1077 (1994).  The State also
        contends that Petitioner brings forth no specific factual allegations
10       that he detrimentally relied on the plea agreement prior to its
        execution.  This Court finds that the State was able to withdraw its
11       first plea agreement and that it invited Petitioner to file a motion on
        the issue stating otherwise.  The Court never ordered Petitioner or
12       his attorney to respond with a written motion.  This Court finds that
        Petitioner has failed to present any facts that if true would entitle
13       him to relief.  Therefore, Petitioner's claim as to counsel's failure
        to file a motion to force the State to specifically perform on its first
14       plea agreement is dismissed.

15  #22, Ex. 61, at 3.

16    The Supreme Court of Nevada affirmed the state district court's decision as to this claim

17  on the grounds that petitioner had not demonstrated that the district court's findings were not

18  supported by substantial evidence or were clearly wrong and that he had not demonstrated

19  that the lower court erred as a matter of law.[21]

20    Petitioner has not carried his burden of demonstrating that the state courts' rejection

21  of Ground 1-1 was contrary to or an unreasonable application of clearly established federal

22  law.  Petitioner did not even respond in the reply on this claim, responding only as to Ground

23  1-6.

24    Petitioner has presented no federal constitutional or Nevada state authority tending to

25  establish a reasonable probability that a motion to enforce the unconsummated plea

26  _____

27       [20]#21, Ex. 24, at 39.

28       [21]#22, Ex. 94, at 2-3.

agreement would have been successful.[22]   In the prior negotiations, the State offered a recommendation of 24 to 60 month consecutive sentences.  The State did so first for a proposed plea deal that would have closed No. CR02-1040 alone, in negotiations conducted *before* Griffin was charged with the April 6, 2002, armed robbery in No. CR02-1201.  The State then did so for a proposed plea deal that would have closed both No. CR02-1040 and No. CR02-1201, pursuant to a package deal including a recommendation of 24 to 60 month consecutive sentences also in No. CR02-1201.  After Griffin declined to enter a plea in No. CR02-1201, the State was under no obligation, under either state or federal law, to nonetheless enter into a plea bargain that concluded both cases – with an agreement to dismiss No. CR02-1201 as part of the overall deal – based upon the exposure previously offered as to only one case.  While Griffin maintains that he did not commit the armed robbery in No. CR02-1201, the State had evidence tending to establish to the contrary, including a positive in-court identification by the victim.  The State was not required to close both cases at the same sentencing exposure that it previously had offered as to only one case.

Griffin cites no authority holding that the State was required to abandon consideration of No. CR02-1201 in plea negotiations simply because he denied that he did the offense.  It is an inherent aspect of plea bargaining that securing the dismissal of additional charges can come at the cost of an agreement to additional sentencing exposure on the charges to which the defendant enters a plea.  The State clearly could bargain for more potential exposure in a plea deal that closed both cases.  Petitioner has presented no authority holding that what in truth is inherent to the plea bargaining process is unconstitutionally "coercive."  If petitioner

---

[22] *Cf. United States v. Savage*, 978 F.2d 1136, 1138 (9th Cir.1992)("[N]either the defendant nor the government is bound by a plea agreement until it is approved by the court."); *United States v. Fagan*, 996 F.2d 1009, 1013 (9th Cir.1993) ("A plea agreement that has not been entered and accepted by the trial court does not bind the parties.").

The state court record further fully supports the state district court's factual finding that it invited, but did not direct, defense counsel to file such a motion if the defense wanted.  The point in any event is not a material one.  If the state court had directed the filing of such a motion but there was not a reasonable probability of success on the motion if it were filed, petitioner would not be able to establish prejudice based upon the failure to file the motion.

-15-

1  did not believe that the plea deal was in his best interests considering the evidence and

2  potential exposure in the two cases, he was free to go to trial, in either one or both cases.

3      Petitioner further has not established a reasonable probability that a defendant in his

4  situation would not have entered the plea and instead would have elected to go to trial but for

5  counsel's failure to file the meritless motion.  The Court notes in this regard that petitioner

6  himself entered the plea at the very same proceeding where the prospect of filing such a

7  motion was discussed.  If the filing of the motion were a determinative factor for him, all that

8  he had to do was decline to enter into the plea and instruct his counsel to file the motion.

9  Petitioner did not do that.  He instead affirmed to the state district court, *inter alia*, that he had

10  enough time to discuss the entire matter with counsel, that he was satisfied with the legal

11  services provided by counsel, that he understood that he did not have to change his plea, that

12  no promises outside of the plea agreement had been made to him to induce him to change

13  his plea, that no threats had been made against him to get him to change his plea, that he was

14  changing his plea freely and voluntarily, and that he was pleading guilty because he was guilty

15  and for no other reason.  These declarations to the state district court during the plea colloquy

16  present a formidable barrier to any claim by Griffin that defense counsel's failure to file the

17  motion in the short interval before Griffin accepted the plea deal affected the outcome as to

18  entry of a plea.  *Blackledge v. Allison*, 431 U.S. 63, 73-74, 97 S.Ct. 1621, 1629, 52 L.Ed.2d

19  136 (1977).[23]

20      The state courts' rejection of this claim accordingly was neither contrary to nor an

21  unreasonable application of clearly established federal law, as reflected by *Strickland, Tollett*

22  and *Hill.*

23      Ground 1-1 therefore does not provide a basis for federal habeas relief.

24

25      [23]The Court additionally notes that petitioner, by the plea deal, secured the dismissal of a criminal

26  case in which additional charges potentially could have been filed based upon the robber striking the store
    clerk with the weapon and, more importantly, pulling the trigger while stating that he was going to kill the

27  clerk.  There perhaps was a strong incentive for a defendant in petitioner's situation to accept culpability in
    No. CR02-1040 (where he was followed from the scene, arrested, and immediately identified) in an effort to

28  avoid possible exposure in No. CR02-1201 that potentially might not be limited to only armed robbery.

*Ground 1-2*

In Ground 1-2, petitioner alleges that he was denied effective assistance of counsel because counsel did not object to the State's reference to the facts in case No. CR02-1201 in the sentencing on No. CR02-1040.  Griffin urges that it was improper for the State to refer to the facts in No. CR02-1201 because the case was dismissed only minutes later at the sentencing. Petitioner maintains that "the State knew Case 1201 would be dismissed because Griffin did not do the acts charged in 1201, yet the State blatantly used the facts of the soon to be dismissed case against Griffin."[24]

The basic background facts regarding this claim, including those concerning the relationship between the two cases, are summarized in the discussion above of Ground 1-1.

In the plea agreement, Griffin expressly acknowledged the following:

> I understand and agree that pursuant to the terms of the plea agreement stated herein, any counts that are to be dismissed and any other cases charged or uncharged which are either to be dismissed or not pursued by the State, may be considered by the court at the time of my sentencing.

#21, Ex. 22, at 4, ¶ 11.

At the sentencing, the State maintained that "contrary to Mr. Griffin's protestations that he's not the person who committed that armed robbery," the State had evidence tending to establish that he did.  The State pointed to the store clerk's positive identification of Griffin as the robber and Eric Norman's positive identification of Griffin as the person who provided him the necklace.[25]

On state post-conviction review, the state district court rejected a related independent substantive claim on the following grounds:

> Petitioner . . . claims the State, during Petitioner's sentencing hearing, wrongfully referred to charges that were later dismissed.  The State argues that this claim should [be] dismissed because, under Nevada law, a prosecutor may cite to dismissed charges at sentencing.  See *Jezierski v. State*, 107 Nev. 395, 812

---

[24]#32, at electronic docketing page 4.

[25]#21, Ex. 24, at 18-19.

1
2

        P.2d 355 (1991).  The Court finds that the State's reference to dismissed charges against the Petitioner was not wrongful, and, therefore, Petitioner's claim is dismissed.

3
#22, Ex. 61, at 3.

4
        The state district court rejected the related claim of ineffective assistance of counsel on

5
the following grounds:

6
7
8
9

        Petitioner also claims his counsel was ineffective because he did not object to the State's reference to dismissed charges at sentencing.  The Court addressed this point in Petitioner's first claim for relief, holding that Nevada law allows prosecutors to refer to dismissed charges at sentencing.  Therefore, the Court finds that Petitioner . . . has failed to present any fact, if true, that would entitle him to relief.  Thus this claim is dismissed.

10
#22, Ex. 61, at 4.

11
        The Supreme Court of Nevada affirmed the state district court's decision as to this claim

12
on the grounds that petitioner had not demonstrated that the district court's findings were not

13
supported by substantial evidence or were clearly wrong and that he had not demonstrated

14
that the lower court erred as a matter of law.[26]

15
        Petitioner has not carried his burden of demonstrating that the state courts' rejection

16
of Ground 1-2 was contrary to or an unreasonable application of clearly established federal

17
law.

18
        Petitioner did not even respond in the reply on this claim as well, responding only as

19
to Ground 1-6.  He has presented no state or federal authority tending to establish a

20
reasonable probability that an objection by defense counsel to the State's reference to the

21
charges in No. CR02-1201 would have been sustained, much less that such an objection

22
would have changed the outcome of the sentencing proceeding.

23
        At bottom, petitioner's underlying premise for the claim is fundamentally flawed.

24
Petitioner urges that the State acted improperly in referring to the facts in No. CR02-1201

25
because the State allegedly knew that the case was being dismissed because Griffin did not

26
do the acts charged.  No. CR02-1201 was *not* being dismissed on the premise that Griffin did

27

28
      [26]#22, Ex. 94, at 2-3.

-18-

1   not commit the armed robbery.  Rather, No. CR02-1201 was being dismissed as part of a plea

2   deal in which the State agreed to dismiss No. CR02-1201 in connection with petitioner's entry

3   of a plea to the charge in No. CR02-1040.  The State never abandoned its position that Griffin

4   committed the armed robbery in No. CR02-1201, and it never made any concession that

5   Griffin did not commit the armed robbery.  The armed robbery charge in No. CR02-1201

6   instead was supported by testimony by the store clerk that the justice court found established

7   probable cause for the charge to proceed forward in the district court.  As discussed as to

8   Ground 1-1, Griffin's own self-serving statements that he did not commit the armed robbery

9   in No. CR02-1201 do not establish that he did not commit the armed robbery.  His own self-

10  serving statements clearly did not provide a basis for barring the State from referring to the

11  facts in No. CR02-1201 at sentencing, especially given Griffin's express acknowledgment in

12  the written plea agreement that the sentencing court could consider dismissed charges.

13         Moreover, as the Ninth Circuit has noted, "the Supreme Court has not delineated a

14  standard which should apply to ineffective assistance of counsel claims in noncapital

15  sentencing cases [such that] ... there is no clearly established federal law as determined by

16  the Supreme Court in this context."  *Davis v. Grigas*, 443 F.3d 1155, 1158 (9th

17  Cir.2006)(internal citation omitted).  Because there is no clearly established Supreme Court

18  precedent that applies in this noncapital sentencing context, petitioner cannot establish that

19  the state courts' rejection of his claim was either contrary to or an unreasonable application

20  of clearly established federal law as determined by the United States Supreme Court.  *Id.*

21         The state courts' rejection of this claim accordingly was neither contrary to nor an

22  unreasonable application of clearly established federal law.

23         Ground 1-2 therefore does not provide a basis for federal habeas relief.

24      ***Ground 1-3***

25         In Ground 1-3, petitioner alleges that he was denied effective assistance of counsel

26  because counsel failed to object to and correct "false information" and "errors" in the

27  presentence investigation report.  Griffin asserts that he brought "these errors" to counsel's

28  attention yet he did nothing to correct them.  #32, at electronic docketing pages 4-5.

1    As respondents correctly note, the amended petition does not specify, *inter alia*, what

2    "false information" or "errors" allegedly were contained in the presentence investigation report.

3    Nor does petitioner allege how he was prejudiced as a result.

4    At the sentencing, defense counsel advised the court, *inter alia*, that the presentence

5    investigation report did not correctly state the plea bargain, which was acknowledged by the

6    parole and probation representative.  Counsel also advised the court that the report referred

7    to a number of arrests and charges that were dismissed, not pursued, or as to which no

8    information was available; and he asked the court to disregard them.  Parole and probation

9    recommended consecutive sentences of 72 to 180 months, with the consecutive sentencing

10   on the weapon enhancement being mandatory.  The State sought to have the court follow this

11   recommendation, noting, *inter alia*, that petitioner had two prior convictions, one for robbery

12   and the other for armed robbery.  The defense sought lesser consecutive sentences of 24 to

13   60 months.  The court imposed consecutive sentences of 24 to 180 months.[27]

14   On state post-conviction review, the state district court held an evidentiary hearing on

15   petitioner's claims that the presentence investigation report contained errors and that his

16   counsel was ineffective for failing to object to and correct the errors.

17   At the evidentiary hearing, Griffin testified, *inter alia*, that he pointed out to defense

18   counsel that the report showed 26 arrests with no dispositions.  He testified that he instead

19   had been arrested prior to the present case "no more than" 14 times.  When pressed on cross-

20   examination, however, he could not identify any errors in the description of his arrest record.

21   All that he could point to, as purportedly erroneous, was the fact that a single arrest on multiple

22   charges would generate multiple entries on the report.  His argument thus apparently turned

23   on the distinction that the 26 entries reflected that he was arrested on 26 different charges

24   rather than that he was arrested on 26 different occasions.  Griffin further acknowledged that

25   defense counsel had advised the court that the arrests had not led to convictions and

26   requested that the court disregard the arrests.  #22, Ex. 66, at 6-8 & 23-28.

27

28   [27]#21, Ex. 24, at 3-5, 7, 9-10, 19-20, 25-27 & 39.

Griffin further acknowledged that the prior criminal history section of the report accurately reported his two prior felony convictions, one for robbery and the other for armed robbery.  He relied, however, on an erroneous reference on the last page of the report that referred to an aggravating factor of: "Extensive criminal history, including three felony convictions of violence."[28]

Griffin explained that his belief that the above arrest and conviction references in the presentence report resulted in him getting 180 months for the top end of his sentence was based on the following:

> . . . I remember the judge and Miss Pappas [the parole and probation representative] – well, the judge mentioned to Miss Pappas, "This paperwork looks – the P and P looks like it's right on the money."  So he said, "I'm going to give you the low end of the DA and the high end of the P and P."

#22, Ex. 66, at 9.

What the transcript of the sentencing instead shows, however, is that it was the *prosecutor* who said: "After making the changes, I think the Division's recommendation is right on the money, Judge."[29]   The sentencing transcript does not contain anything remotely resembling the exchange described by Griffin between the judge and the division representative.  His testimony seeking to establish prejudicial impact thus was directly belied by the contemporaneous record.

The state district judge, who presided at both the sentencing and the state post-conviction evidentiary hearing, found as follows.  He found in both oral and written findings that he did not rely on the arrest record and that he relied on the correct number of two convictions – which is how the State had argued the matter – rather than three.  The judge stated that he imposed the 180-month high end on the sentence because of the two prior robbery convictions, one of which was for armed robbery.  The court accordingly rejected the post-conviction claims presented.  #22, Ex. 66, at 45-47; *id.*, Ex. 71, at 1-2.

---

[28]#21, Ex. 24, at 6-7 & 16-20.

[29]*Id.*, at 19, lines 9-11.

1      The Supreme Court of Nevada, citing the *Strickland* standard, affirmed the state district

2  court's decision as to the ineffective assistance claim on the grounds that petitioner had not

3  demonstrated that the district court's findings were not supported by substantial evidence or

4  were clearly wrong and that he had not demonstrated that the lower court erred as a matter

5  of law.[30]

6      Petitioner has not carried his burden of demonstrating that the state courts' rejection

7  of Ground 1-3 was based upon an unreasonable determination of fact or was contrary to or

8  an unreasonable application of clearly established federal law.

9      Here, too, petitioner did not respond in the reply as to this claim.  The conclusory claim

10  and lack of argument presented by petitioner on federal habeas review clearly fails to establish

11  that the state courts' rejection of the corresponding claim was based upon an unreasonable

12  determination of fact or was either contrary to or an unreasonable application of clearly

13  established federal law.  The state district court expressly found that the arrests did not factor

14  into the sentence and that the sentence was based upon petitioner having two, not three, prior

15  convictions.  Petitioner has not begun to carry his burden of demonstrating that the state

16  district court's factual determination was an unreasonable determination of fact.  The state

17  court's factual findings thus are clothed with a presumption of correctness.  *Lambert*, 393 F.3d

18  at 972.  In light of the state district court's findings, petitioner cannot establish prejudice under

19  *Strickland* even if he, *arguendo*, could establish deficient performance by counsel.  *See also*

20  *Davis, supra* (there is no clearly established Supreme Court precedent delineating the

21  standards applicable to ineffective assistance of counsel claims in noncapital sentencing

22  cases).

23      Ground 1-3 therefore does not provide a basis for federal habeas relief.

24      **Ground 1-4**

25      In Ground 1-4, petitioner alleges that he was denied effective assistance of counsel

26  because counsel allegedly misled him into accepting the plea by erroneously informing him

27  

28      [30]#22, Ex. 94, at 2-3.

1   – off the record – that the State would not pursue the 180-month top end of the sentencing

2   range but instead would make a recommendation of 24 to 60 month consecutive sentences

3   that was discussed in the prior plea negotiations that were not consummated.[31]

4          The basic background facts regarding this claim, including those concerning the prior

5   negotiations, are summarized in the discussion above of Ground 1-1.

6          In the written plea agreement, petitioner expressly acknowledged, *inter alia*, the

7   following:

8                   I understand that the consequences of my plea of guilty are
           that I may be imprisoned for a period of two to fifteen years in the
9          Nevada State Prison plus an additional consecutive sentence of
           two to fifteen years in the Nevada State Prison for the weapon
10         enhancement and that I am not eligible for probation.

11                  In exchange for my plea of guilty, the State, my counsel
           and I have agreed to recommend the following: The State will be
12         free to argue for an appropriate sentence. . . . .

13                  I understand that, even though the State and I have
           reached this plea agreement, the State is reserving the right to
14         present arguments, facts, and/or witnesses at sentencing in
           support of the plea agreement.
15
                                          . . . .
16
                   I understand that the Court is not bound by the agreement
17         of the parties and that the matter of sentencing is to be
           determined solely by the Court. . . . .
18
                                         . . . . .
19
                   My plea of guilty is voluntary, is not the result of any threats,
20         coercion or promises of leniency.

21                  I am signing this Plea Memorandum voluntarily with advice
           of counsel, under no duress, coercion, or promises of leniency.
22

23   #21, Ex. 22, at 3-5, ¶¶ 6-8, 12 & 15-16.

24          In the plea colloquy, Griffin again acknowledged on the record that no promises outside

25   of the plea agreement had been made to him to induce him to change his plea, that the State

26   was free to argue for the maximum penalty, that the court did not have to follow any

27   _____

28         [31]#32, at electronic docketing pages 4-5.

negotiations, and that his sentencing exposure was consecutive sentences of two to fifteen years on the robbery and weapon enhancement, consecutive to the sentence that he then was serving.[32]

On state post-conviction review, the state district court rejected a related independent substantive claim on the following grounds:

> Petitioner argues that the State enticed him into entering the plea agreement by promising to argue for a lighter sentence. The State contends that this argument should be dismissed because the record belies Petitioner's allegation. This Court finds that Petitioner signed the plea agreement, which states a prison term of 2 to 15 years for both the burglary [sic] charge and the weapon enhancement.   Petitioner raises no specific factual allegations that Petitioner entered into that plea agreement involuntarily.  Thus, the Court dismisses this portion of Petitioner's claim.

#22, Ex. 61, at 2.

The state district court rejected the related claim of ineffective assistance of counsel on the following grounds:

> Petitioner also claims counsel misinformed him as to the State's recommendation at sentencing.  The State contends this claim should be dismissed because Nevada law treats plea agreements as contracts and, therefore, the terms of the plea agreement control regardless of Petitioner's subjective expectations.  This Court addressed this issue in Petitioner's first claim, finding that the plea agreement clearly stated the maximum term that Petitioner could receive under the agreement. Therefore, this Court finds that the Petitioner's statement is conclusory, failing to show specific facts that would entitle him to relief on this issue.   This Court dismisses this portion of Petitioner's . . . claim for relief.

#22, Ex. 61, at 4.

The Supreme Court of Nevada affirmed the state district court's decision as to this claim on the grounds that petitioner had not demonstrated that the district court's findings were not supported by substantial evidence or were clearly wrong and that he had not demonstrated that the lower court erred as a matter of law.  #22, Ex. 94, at 2-3.

---

[32]#21, Ex. 21, at 8-11.

Petitioner has not carried his burden of demonstrating that the state courts' rejection of Ground 1-4 was based upon an unreasonable determination of fact and/or was contrary to or an unreasonable application of clearly established federal law.  On this claim as well, petitioner did not even respond in the reply on this claim.

In *Blackledge*, the Supreme Court stated:

> . . . . [T]he representations of the defendant, his lawyer, and the prosecutor at . . . a [plea] hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings.  Solemn declarations in open court carry a strong presumption of verity.  The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible.

431 U.S. at 73-74, 97 S.Ct. at 1629.  The *Blackledge* Court observed that "a petitioner challenging a plea given pursuant to procedures [similar to those employed by the state court in this case] will necessarily be asserting that not only his own transcribed responses, but those given by two lawyers, were untruthful."  431 U.S. at 80 n.19, 97 S.Ct. at 1632 n. 19. Under *Blackledge*, a collateral attack that directly contradicts the responses at the plea proceedings "will entitle a petitioner to an evidentiary hearing only in the most extraordinary circumstances."  *Id*.

Under *Blackledge*, Griffin cannot accomplish what he is trying to do here.  He may not overturn an otherwise clearly valid guilty plea, accepted following a thorough plea colloquy, based upon uncorroborated allegations as to what allegedly occurred "off the record" that directly contradict the declarations that he made to the court at the time of the plea. Petitioner's uncorroborated *post hoc* account, which flies directly in the face of his acknowledgments to the court during the colloquy, does not present "the most extraordinary circumstances" that would warrant an evidentiary hearing under *Blackledge*.  The state courts' summary dismissal of this claim clearly was neither contrary to nor an unreasonable application of clearly established federal law.

Ground 1-4 therefore does not provide a basis for federal habeas relief.

/ / / /

***Ground 1-5***

In Ground 1-5, petitioner alleges that he was denied effective assistance of counsel because counsel allegedly failed to perform "investigation and defenses necessary to dismiss" case No. CR02-1201 before his sentencing.  Griffin maintains that "[t]here were discussions" between his counsel and the State "well before" his sentencing.  He alleges that with "a little effort," only "a modicum of effective assistance," counsel "could have easily performed sufficient investigation . . . to insure" the case was dismissed prior to his sentencing.  Griffin alleges that counsel's failure adversely impacted his sentencing.[33]

The basic background facts regarding this claim, including those concerning the relationship between the two cases, are summarized in the discussion above of Ground 1-1.

As respondents note, the amended petition does not specify, *inter alia*, what further investigation and defenses should have been pursued.  Nor does the amended petition specify what information would have been developed through such unspecified investigation that allegedly would have insured the dismissal of No. CR02-1201.

The state district court rejected the corresponding claim presented in the state courts on the following grounds:

> . . . Petitioner's claim that counsel failed to timely investigate the separate charge raises no factual allegation that entitles him to relief.  Nevada law allows the State to reference dismissed charges; thus, this Court finds that the State would have been able to call the Court's attention to the charges even if counsel was successful in getting the charges dismissed after an investigation.  Therefore, this Court dismisses this portion of Petitioner's claim.

#22, Ex. 61, at 3.

The Supreme Court of Nevada affirmed the state district court's decision as to this claim on the grounds that petitioner had not demonstrated that the district court's findings were not supported by substantial evidence or were clearly wrong and that he had not demonstrated that the lower court erred as a matter of law.  #22, Ex. 94, at 2-3.

---

[33]#32, at electronic docketing pages 6-7.

1       Petitioner has not carried his burden of demonstrating that the state courts' rejection

2   of Ground 1-5 was based upon an unreasonable determination of fact or was contrary to or

3   an unreasonable application of clearly established federal law.  Here as well, petitioner did not

4   even respond in the reply on this claim.

5       The conclusory claim and lack of argument presented on federal habeas review clearly

6   fails to carry petitioner's burden.

7       The Court notes, first, that the "discussions as to the dismissal" of No. CR02-1201

8   between counsel and the State *concerned the dismissal of the case pursuant to a plea*

9   *bargain*.   Petitioner repeatedly has stated or implied in this proceeding that the State

10  dismissed No. CR02-1201 because the State allegedly knew that Griffin did not commit the

11  crime.  As discussed extensively above as to Grounds 1-1 and 1-2, the record flatly refutes

12  Griffin's representations.  The crime victim made a positive in-court identification of Griffin as

13  the robber, and there is no indication in the record that the State intended to abandon the

14  prosecution in No. CR02-1201 in the absence of a plea deal.  No. CR02-1201 ultimately was

15  dismissed pursuant to a plea bargain under which No. CR02-1201 would be dismissed *at*

16  *Griffin's sentencing*, not before, and under which the sentencing court was not precluded from

17  considering dismissed charges.  While Griffin maintained and maintains that he did not commit

18  the robbery in No. CR02-1201, his self-serving denials – clearly – do not establish that there

19  was not sufficient evidence for the State to bring the case to trial.  Petitioner's implication that

20  No. CR02-1201 was hovering on the brink of dismissal prior to his sentencing, per discussions

21  between counsel, is directly belied by the record.  The state court record instead reflects that,

22  absent the plea deal, the case was going to trial.[34]

23      The Court notes, second, that petitioner, in his conclusory claim and his nonresponsive

24  reply as to this claim, has completely failed to present any specific information or defense that

25  would have provided a basis for dismissing No. CR02-1201.  Again, the store clerk positively

26  identified Griffin as the robber.  Petitioner's claim is speculative as well as conclusory, as it is

27

28      [34]See text, *supra*, at 10, 15 & 18-19.

1   entirely speculative as to what further – as yet unspecified – investigation would have revealed

2   that was not known at the time and that would have resulted in the dismissal of the case.  In

3   order to establish ineffective assistance of counsel, petitioner must establish not only what

4   counsel allegedly failed to do, but also that he sustained prejudice as a result.  It is entirely

5   speculative that further investigation would have yielded results that would have provided a

6   basis for dismissal of No. CR02-1201 prior to petitioner's sentencing.

7       The state courts' rejection of this conclusory and speculative claim was neither contrary

8   to nor an unreasonable application of clearly established federal law.

9       Ground 1-5 therefore does not provide a basis for federal habeas relief.

10   **Ground 1-6**

11      In Ground 1-6, petitioner alleges that defense counsel "failed to advise and/or consult

12   with" him regarding his direct appeal rights.  He maintains that he discovered his direct appeal

13   rights from other inmates.  According to Griffin, he filed a *pro se* notice of appeal only after

14   learning of his appeal rights from fellow inmates.  Petitioner alleges that "this failure by counsel

15   to advise and/or consult with [him] regarding [his] direct appeal rights amounts to ineffective

16   assistance."[35]

17      Petitioner did not include any claim in Ground 1-6 in the amended petition alleging that

18   counsel provided ineffective assistance by failing to argue any particular issue or issues on

19   appeal.  The claim in Ground 6 instead was based upon counsel allegedly failing "to advise

20   and/or consult with" petitioner as to his direct appeal rights, such that petitioner did not learn

21   of his appeal rights until he learned of them from other inmates.

22      At the outset, petitioner's allegation that he was not advised or informed of his direct

23   appeal rights, such that he had to first learn of them from other inmates, is directly belied by

24   the state court record.  During the plea colloquy, the state district court specifically informed

25   Griffin that "you have a right of appeal even on a guilty plea."  The court told Griffin to "[m]ake

26   sure that you talk to [defense counsel] about that, because any appeal must be filed within 30

27

28      [35]#32, at electronic docketing page 7.

days from the date of sentencing."  The court asked Griffin whether he understood that, and he replied: "Yes, sir."  The court asked him whether he had any questions, and he responded: "No, sir."[36]

Petitioner's allegation that he was not informed of his direct appeal rights until he was told by other inmates thus is completely false.

Indeed, the state court record reflects that the public defender filed a timely notice of appeal at 8:57 a.m. on November 21, 2002, before petitioner's *pro se* notice of appeal was filed by the Clerk later that day at 2:16 p.m. on November 21, 2002.[37]  The public defender thereafter pursued the appeal, filing a fast track statement in support of the appeal.  Counsel sought review of the sentence for abuse of discretion and requested a remand for a resentencing by a different judge.[38]  The fast track statement reflects that the public defender had filed the notice of appeal "at Mr. Griffin's request."[39]

Subsequently on state post-conviction review, the state district court rejected the corresponding claim of ineffective assistance of counsel presented to that court on the following grounds:

> . . . Petitioner states that counsel was ineffective because he failed to inform Petitioner of his right to appeal.  This Court finds that Petitioner appealed his sentence to the Nevada Supreme Court.  The Nevada Supreme Court, upon review, upheld Petitioner's sentence.  Therefore, the Court dismisses Petitioner's claim on [sic] ineffective assistance that he was uninformed as to an appeal.

#22, Ex. 66, at 4-5.

---

[36]#21, Ex. 21, at 9.  Petitioner's reliance in the reply upon holdings that a federal district court must inform a federal criminal defendant of his appeal rights is misplaced for a number of reasons.  First, Ground 1-6, as pled in the amended petition, presented a claim of ineffective assistance of counsel, not a claim of error by the state court.  Second, rules applicable in federal criminal cases are not always based upon federal constitutional principles applicable to the state courts, and there is no federal constitutional requirement that a state court advise a defendant of his appeal rights.  Third, in all events, the state district court in fact informed Griffin that he would have a right to file an appeal after the sentencing.

[37]#21, Exhs. 31 & 32.

[38]#21, Ex. 38.

[39]*Id.*, at 2.

1    The Supreme Court of Nevada affirmed the state district court's decision as to this claim

2    on the grounds that petitioner had not demonstrated that the district court's findings were not

3    supported by substantial evidence or were clearly wrong and that he had not demonstrated

4    that the lower court erred as a matter of law.[40]

5    The state courts' rejection of the ineffective assistance claim presented in Ground 1-6

6    was neither contrary to nor an unreasonable application of clearly established federal law.

7    Petitioner clearly was informed of his right to appeal by the state district court, and he filed a

8    timely appeal, both through counsel and *pro se*.  He accordingly cannot conceivably establish

9    prejudice from an alleged failure to advise and/or consult with him regarding his direct appeal

10   rights.  He was not deprived of a direct appeal through any such alleged failure to inform and

11   consult with him as to his appeal rights.

12   The fundamental flaw in the claim presented in the amended petition in Ground 1-6 is

13   reflected by petitioner's reliance upon *Martin v. Texas*, 737 F.2d 460 (5th Cir. 1984).  Griffin

14   relies upon *Martin* for the proposition that a failure to inform a defendant of his right to appeal

15   results in prejudice *per se*.  However, *Martin* was a case, unlike the present one, where a

16   timely direct appeal was not filed.  Moreover, unlike the present case, the defendant "was not

17   informed of this right by the trial judge."  737 F.2d at 462.  In a case, such as the present one,

18   where (a) the defendant was informed of his right to appeal by the trial court and (b) a timely

19   appeal in fact was filed, there not only is no *per se* prejudice from counsel's alleged failure to

20   inform and consult with the defendant as to his appeal rights, there is no prejudice at all.

21   The state court's rejection of this claim accordingly was neither contrary to nor an

22   unreasonable application of clearly established federal law.

23   In the federal reply, petitioner sought to present a claim for the first time in this federal

24   action that counsel was ineffective for failing to raise a claim on direct appeal based upon

25   alleged errors in the presentence investigation report.  This is a distinct and different claim

26   from the claim raised in the amended petition in Ground 1-6.  The amended petition presented

27

28      [40]#22, Ex. 94, at 2-3.

-30-

1  only a claim based upon a failure to inform and consult with petitioner regarding his direct
2  appeal rights.  The amended petition presented no claim that counsel was ineffective based
3  upon a failure to raise a particular claim or claims in the direct appeal that was filed.  Ground
4  1-6 made no mention of a failure to raise a claim on direct appeal based upon alleged errors
5  in the presentence investigation report.

6       A habeas petitioner may not raise a claim for the first time in the reply.  *See,e.g.,*
7  *Cacoperdo v. Demosthenes*, 37 F.3d 504, 507 (9th Cir.1994).  The only way to present an
8  additional claim is in a properly-filed amended petition.  Under Rule 15(a)(2) of the Federal
9  Rules of Civil Procedure, a petitioner can amend the petition after the respondents have filed
10 an answer only with the respondents' written consent or by obtaining leave of court to amend.
11 Petitioner has not presented the claim argued in the reply in a properly-filed amended petition,
12 and the claim therefore is disregarded herein.

13      Ground 1-6 does not provide a basis for federal habeas relief.

14                    ***Consideration of a Certificate of Appealability***

15      Under Rule 11 of the Rules Governing Section 2254 Cases, the district court must issue
16 or deny a certificate of appealability (COA) when it enters a final order adverse to the
17 applicant.  A district court order granting or denying a certificate of appealability does not
18 eliminate the requirement that the petitioner must file a timely notice of appeal in order to
19 appeal the court's judgment.  A motion to reconsider the order regarding a certificate of
20 appealability does not extend the time to appeal.

21      As to the claims rejected by the district court on the merits, under 28 U.S.C. § 2253(c),
22 a petitioner must make a "substantial showing of the denial of a constitutional right" in order
23 to obtain a certificate of appealability.  *Slack v. McDaniel*, 529 U.S. 473, 483-84, 120 S.Ct.
24 1595, 1603-04, 146 L.Ed.2d 542 (2000); *Hiivala v. Wood*, 195 F.3d 1098, 1104 (9th Cir. 1999).
25 To satisfy this standard, the petitioner "must demonstrate that reasonable jurists would find
26 the district court's assessment of the constitutional claim debatable or wrong." *Slack*, 529 U.S.
27 at 484, 120 S.Ct. at 1604.

28      The Court denies a COA as to all claims, for the reasons outlined below.

*Ground 1-1*

Jurists of reason would not find the dismissal of Ground 1-1 on the merits to be debatable or wrong.

In Ground 1-1, petitioner alleges that he was denied effective assistance of counsel because counsel did not file a motion to hold the State to a prior unconsummated plea agreement.  Petitioner maintains that the State was attempting to pressure him into pleading guilty in another case to an armed robbery that he allegedly did not commit.  He alleges that, when he refused to do so, the State withdrew from the prior agreement and instead presented a proposed plea agreement that had three times as much sentencing exposure.  Griffin maintains that counsel should have fought against the State's "transparent attempt to coerce Griffin (successfully) into entering the second plea agreement."

Petitioner has presented no state or federal authority tending to establish a reasonable probability that a motion to enforce the unconsummated plea agreement would have been successful.  While petitioner maintains that he did not commit the armed robbery in the other case, the State had evidence tending to establish to the contrary, including a positive in-court identification by the victim.  Petitioner cites no authority tending to establish that the State was required to abandon consideration of the other case in plea negotiations simply because of his self-serving denial of the other armed robbery.  Nor does he cite authority tending to establish that the State was required to enter into a plea deal closing both cases at the same sentencing exposure that it previously had offered as to only one case.  At bottom, he presents no authority holding that what in truth was inherent to the plea bargaining process was unconstitutionally "coercive."

Petitioner further has not established a reasonable probability that a defendant in his situation would not have entered the plea and instead would have elected to go to trial but for counsel's failure to file the motion.  Petitioner himself entered the plea at the very same proceeding where the prospect of filing such a motion was discussed.  If the filing of the motion were a determinative factor for him, all that he had to do was decline to enter into the plea and instruct his counsel to file the motion.  Petitioner did not do that.  He instead made

1   multiple affirmations during the plea colloquy confirming that his plea was entered freely and

2   voluntarily.  These declarations present a formidable barrier under *Blackledge, supra*, to a

3   claim that counsel's failure to further pursue the issue in the short interval before Griffin

4   accepted the plea deal affected the outcome as to petitioner's entry of a plea.

5       Reasonable jurists therefore would not find debatable or wrong this Court's conclusion

6   that the state supreme court's rejection of this claim was neither contrary to nor an

7   unreasonable application of clearly established federal law.  See text, *supra*, at 7-16.

8       ***Ground 1-2***

9       Jurists of reason would not find the dismissal of Ground 1-2 on the merits to be

10  debatable or wrong.

11      In Ground 1-2, petitioner alleges that he was denied effective assistance of counsel

12  because counsel did not object to the State's reference to the facts of his other armed robbery

13  case at sentencing, a case that was dismissed moments later.  Petitioner urges that the other

14  armed robbery case was being dismissed because the State allegedly knew that he did not

15  commit the offense.

16      At bottom, petitioner's underlying premise for the claim is fundamentally flawed.  The

17  other case was *not* being dismissed on the premise that Griffin did not do the acts charged.

18  Rather, the other case was being dismissed as part of an overall plea deal in which the State

19  agreed to dismiss the other case in exchange for petitioner's plea.  Petitioner's own self-

20  serving denials clearly did not provide a basis for barring the State from referring to the facts

21  of the other case at sentencing, especially given Griffin's express acknowledgment in the

22  written plea agreement that the sentencing court could consider other charges.

23      Petitioner presents no federal constitutional or state law authority tending to establish

24  a reasonable probability that an objection by defense counsel to the State's reference to the

25  charges in the other case would have been sustained, much less that such an objection would

26  have changed the outcome of the sentencing proceeding.

27      Moreover, the Ninth Circuit has noted that the United States Supreme Court has not

28  delineated a standard applicable to ineffective assistance of counsel claims in noncapital

1    sentencing cases.  There accordingly is no clearly established federal law as determined by

2    the Supreme Court in this context.  *Davis, supra*.

3        Reasonable jurists therefore would not find debatable or wrong this Court's conclusion

4    that the state supreme court's rejection of this claim was neither contrary to nor an

5    unreasonable application of clearly established federal law.  See text, *supra*, at 17-19.

6        **Ground 1-3**

7        Jurists of reason would not find the dismissal of Ground 1-3 on the merits to be

8    debatable or wrong.

9        In Ground 1-3, petitioner alleges conclusorily that he was denied effective assistance

10   of counsel because counsel failed to object to and correct "false information" and "errors" in

11   the presentence investigation report (PSR).

12       The only clear error identified in the PSR at the state court evidentiary hearing was that

13   the report detailed in the criminal history section two prior convictions but referred in the

14   recommendation section to there being three prior convictions.  The state district court made

15   a factual finding – which was consistent with the State's argument at sentencing – that it relied

16   upon there being only two prior convictions at the sentencing.

17       The only other, purported, error identified in the PSR was the fact that arrests on

18   multiple charges from the same incident resulted in multiple entries in the report.  Petitioner

19   complained that his "only" 13 or 14 arrests therefore resulted in 26 entries in the report due

20   to the multiple charges.  Defense counsel did in fact ask the state district court to disregard

21   the arrests section of the report at sentencing.  The state district court made a factual finding

22   that it did not rely upon arrests at sentencing.

23       The conclusory claim and lack of argument presented by petitioner on federal habeas

24   review clearly fails to establish that the state courts' rejection of the corresponding claim was

25   based upon an unreasonable determination of fact or was contrary to or an unreasonable

26   application of clearly established federal law.  The state district court expressly found that the

27   arrests did not factor into the sentence and that the sentence was based upon petitioner

28   having two, not three, previous convictions.  Petitioner has not carried his burden of

1   demonstrating that the state district court's factual determination was an unreasonable
2   determination of fact.  The state court's factual findings thus are clothed with a presumption
3   of correctness.  In light of the state court's findings, petitioner cannot establish prejudice even
4   if he, *arguendo*, could establish deficient performance by counsel.  *See also Davis, supra* (no
5   clearly established Supreme Court precedent delineating the standards applicable to
6   ineffective assistance of counsel claims in noncapital sentencing cases).

7       Reasonable jurists therefore would not find debatable or wrong this Court's conclusion
8   that the state supreme court's rejection of this claim was not based upon an unreasonable
9   determination of fact and was neither contrary to nor an unreasonable application of clearly
10  established federal law.  See text, *supra*, at 19-22.

11  ***Ground 1-4***

12      In Ground 1-4, petitioner alleges that he was denied effective assistance of counsel
13  because counsel allegedly misled him into accepting the plea by erroneously informing him
14  – off the record – that the State would not pursue the 180-month top end of the sentencing
15  range but instead would make a recommendation of 24 to 60 month consecutive sentences
16  that was discussed in prior negotiations that did not lead to a consummated plea agreement.

17      Petitioner's allegations directly contradict multiple acknowledgments by petitioner in
18  both the written plea agreement and the plea colloquy as to, *inter alia*, his sentencing exposure
19  under the plea deal that was consummated.  Under *Blackledge, supra*, he may not accomplish
20  what he is seeking to do here.  He may not overturn an otherwise clearly valid guilty plea,
21  accepted following a thorough plea colloquy, based upon uncorroborated allegations as to
22  what allegedly occurred "off the record" that directly contradict his declarations to the court at
23  the time of the plea.  Petitioner's uncorroborated *post hoc* account, which flies directly in the
24  face of his declarations to the court, does not present "the most extraordinary circumstances"
25  that would warrant an evidentiary hearing under *Blackledge*.

26      Reasonable jurists therefore would not find debatable or wrong this Court's conclusion
27  that the state supreme court's rejection of this claim was neither contrary to nor an
28  unreasonable application of clearly established federal law.  See text, *supra*, at 22-25.

-35-

***Ground 1-5***

In Ground 1-5, petitioner alleges that he was denied effective assistance of counsel because counsel allegedly failed to perform "investigation and defenses necessary to dismiss" his other armed robbery case before his sentencing.

While petitioner maintains that the dismissal of the other case was being discussed between counsel, that discussion *concerned the dismissal of the case pursuant to a plea bargain*.  Nothing in the state court record reflects that the other armed robbery case was vulnerable to dismissal on a defense motion.  The store clerk in the other armed robbery had positively identified Griffin in court as the robber, and there is no indication in the state court record that the State was considering dismissal of the case absent a plea deal.

Petitioner's conclusory claim completely failed to present any specific information or defense that would have provided a basis for dismissing the other armed robbery case.  The claim is speculative as well as conclusory, as it is entirely speculative as to what further – as yet unspecified – investigation would have revealed that was not known at the time and that would have resulted in the dismissal of the case.

Moreover, as the state district court noted, the plea agreement expressly permitted the court to consider dismissed charges, such that a dismissal would not have necessarily precluded the state district court from considering the facts of the other case at sentencing.

Reasonable jurists therefore would not find debatable or wrong this Court's conclusion that the state supreme court's rejection of this claim was neither contrary to nor an unreasonable application of clearly established federal law.  See text, *supra*, at 26-28.

***Ground 1-6***

In Ground 1-6, petitioner alleges that defense counsel "failed to advise and/or consult with" him regarding his direct appeal rights such that he had to learn of his appeal rights from other inmates.

The allegation that petitioner was not informed of his direct appeal rights and learned of them only through other inmates is directly refuted by the record.  The state district court clearly informed petitioner of his appeal rights during the plea colloquy.  Timely notices of

appeal in any event were filed by both the public defender and petitioner, and the public defender represented petitioner on the appeal.  Petitioner accordingly cannot conceivably establish prejudice from an alleged failure by counsel to advise and/or consult with him regarding his direct appeal rights.  He was not deprived of a direct appeal through any such alleged failure to inform and consult with him as to his appeal rights.

Reasonable jurists therefore would not find debatable or wrong this Court's conclusion that the state supreme court's rejection of this claim was neither contrary to nor an unreasonable application of clearly established federal law.  See text, *supra*, at 28-31.

Petitioner further seeks to raise a different and distinct claim for the first time herein in the federal reply alleging that counsel was ineffective for failing to raise a claim on direct appeal based upon alleged errors in the presentence investigation report.  A petitioner may not raise a claim for the first time in the reply.  *See,e.g., Cacoperdo, supra.*

A certificate of appealability therefore will be denied as to all claims.

IT THEREFORE IS ORDERED that the petition for a writ of habeas corpus shall be DENIED and that this action shall be DISMISSED with prejudice on the merits.

IT FURTHER IS ORDERED that a certificate of appealability is DENIED.

The Clerk of Court shall enter final judgment accordingly, in favor of respondents and against petitioner, dismissing this action with prejudice.

DATED: March 30, 2011.


_____
HOWARD D. MCKIBBEN
United States District Judge